Good morning, Your Honors. Vinay Chari for Sohail Khan. I think the main issue in this case is clearly the credibility determination. The I.J. cited a number of grounds, and I think the most logical thing to do is to sort of divide them up by category. And I think the first category I'd address is that of speculation and assumption. There were three instances of that in the I.J.'s decision. First, my client submitted a letter from an officer, a local officer in the Pakistan People's Party, which he'd been a member of, to confirm his involvement with that party. The I.J. took this letter and basically said that it undermined my client's claims of persecution because it didn't specifically reference those claims. And I think that was completely unwarranted for the I.J. to assume that just because those claims weren't mentioned in that corroborative letter, that that claim of persecution hadn't occurred. There was nothing in the record to indicate that this particular party member had any personal knowledge of the extent and manner in which my client was persecuted. And even if there were such evidence in the record, there are plenty of understandable reasons that he wouldn't want to include them in there. If something, I mean, including information like that in a letter would be tantamount to accusing the government of persecution. And if something like that fell into the wrong hands, which I don't think is a very unlikely scenario, that individual himself would find himself in great danger. So I think for a variety of reasons, the I.J. erred in faulting or in holding it against my client that that persecution wasn't mentioned in that corroborative letter. Another instance had to do with my client's testimony that he had basically rested for a couple of days after being arrested and tortured in 2000. The I.J. felt that I guess mere rest for a couple of days at home prior to flight was inconsistent with his claims of having been beaten while in custody. I think that's basically amassed unwarranted speculation about how a person in that situation would act. And I think it's unwarranted because you take a guy like my client. He's been he's had numerous run-ins with the police. He's been tortured numerous times. I think it's just as reasonable for him to do what he did, which was to basically go home, lie low a couple of days, and figure out a way to get out of town, as opposed to seeking external medical condition. And there wasn't any evidence in the record to indicate that he hadn't sought any kind of home treatment anyhow in the two days that he was at home or after he had fled. So I think that's another case of unwarranted speculation. And then also the I.J. referred to the fact that my client traveled, left Pakistan, carrying his actual national I.D. card. And he said that I think his feeling was basically that someone in the kind of danger that my client says he's in shouldn't be carrying his national I.D. card with him. But once again, I think that's unwarranted speculation. My client had somehow managed to procure a false passport with which he managed to leave Pakistan. And I think having done that and having basically secured a manner in which he felt he could leave undetected, it was understandable for him to at least have some evidence on him of his actual identity, of his true identity to present once he left the country and come to seek asylum. So I think that's one full-on category of basically grounds that don't amount to substantial evidence because they're speculation. Another category. Excuse me. Once he left Pakistan, and particularly when he entered the United States, did he always make use of the real identification, the authentic identification? Well, he presented it. He presented it, yes. He didn't use it. He never relied on the false identity that he, the false passport he used to evade Pakistan once he came to this country. He was forthright about his identity once he was here. Okay. Another category of the grounds on which my client was found to be incredible were basically alleged inconsistencies between his testimony and not other parts of his testimony or testimony from other people, but general background information in the record in the form of governmental reports. One notable instance of that had to do with my client's testimony that in 2000, prior to his being arrested in 2000, several months before that, that the police came to his home and beat him up in front of his wife and told him to cease his political activity. The IJ felt that this was inconsistent with the background information because the background information, I guess, didn't explicitly state that these kind of preemptive house calls were being paid by the government or by the police. But I just don't think that's borne out by the record. I think there's a State Department record in there which indicated that in 2000, they were prevented, that the government engaged in preventive detentions, excessive force, and mass arrests to prevent political meetings. And you've got to detain someone from somewhere. And I certainly don't think it's inconsistent with that information, that someone came to his home and beat him up and at that time didn't actually detain him. I think that's – I think the conduct that's described in the State Department report is far more beyond the pale than what he – than what my client described in that instance. And I don't think there's any inconsistency there. Another alleged inconsistency between my client's testimony and the – and the record had to do with the IJ's interpretation of a portion of my client's testimony. The IJ said – the IJ found that my client testified that in 2000, the entire leadership of the Pakistan People's Party was in hiding. I think a review of the record shows that basically my client said that – that party members in the area to which he fled, the province of Gujarat, were actually in hiding. And so I think there was just a misreading of the testimony by the IJ. And at any rate, I don't think it's particularly inconsistent with the information we have in the record, which indicated that in March of 2000, there was an ordinance passed that basically banned all outdoor political gatherings. And I think – I think when you're faced with a situation which you – a political party may not assemble outdoors without breaking the law, you can certainly say that they've been driven underground and possibly in hiding. There's nothing to directly contradict what he said there. Another – the other main class of alleged inconsistencies had to do with my client's political knowledge. There were basically three – three alleged – three events cited or whatever. First of all, there was my client's assertion that there had been martial law in 1993. The IJ said that there was nothing in the record – that that was inconsistent with the record. But I think if you look at the record, it indicates that in April of that year, the president of the country dissolved the parliament, dissolved the assembly, and dismissed the – dismissed the prime minister, and that elections weren't held for another six months. So I think given a situation in which basically there was no legislature and for much of those six months no prime minister, the record isn't clear as to whether there was technically martial law in the sense of a suspension of civil authority. But – but I think it's – my – my client's description of the situation was probably reflective of at least the mood in Pakistan at that time for much of that year. Also, the IJ found that my client didn't know what type of government existed in Pakistan in 1992. His precise testimony on that issue is basically, what type of government was there? He said, oh, I don't exactly remember. And I think that that's actually an understandable answer. It was the year before he became a member of the Pakistan People's Party. And we're talking about a country in which there was a great deal of political turmoil at that time. There's a timeline, I think, around page 203 of the administrative record showing basically setting forth in timeline fashion the tumultuous events of the 1990s in Pakistan. It's not a situation – it's not like here where elections are, you know, like the phases of the moon or something. Given all that turmoil, given the time, given that there was a coalition government at the time and not a monolithic government, and given that it was before my client was even a member of the Pakistan People's Party and was basically about 22 years old, I don't think that that alleged lack of knowledge or precise knowledge should be held against him in finding him credible. Counsel, if we were to agree with you, what relief do you seek? Do you think that the I.J. considered the asylum claims on the merits in addition to – if these things in fact were true rather than, as he said – Well, I think he took steps in that direction inasmuch as he made a finding on internal relocation, which basically required – you know, assuming that my client's testifying credibly, whether he could internally relocate. And I think that's an issue that would probably – if you're assuming my client's testimony is credible, I don't know if he would bother to assess internal relocation if he weren't prepared to find that the things he testified about amounted to past persecution. Did the BIA deal with that? Affirmed with that opinion, Your Honor. Okay. Did you want to save a little time? I'll save a little time. Thank you. We'll hear from the government at this time. Counsel. May it please the Court. My name is Ernesto Molina with the U.S. Department of Justice's Office of Immigration and Immigration Litigation, and I represent the Respondent in this case. In this case, the Court addresses Yemeni Nationals, who applied for asylum before an immigration – an asylum officer, an immigration judge, and the Board of Immigration Appeals, and was never able to convince any of those bodies that he was – had merit to his asylum claim. The Board of Immigration Appeals, in adopting the immigration judge decision, correctly found that his asylum application – that's the next case, sorry. I'm sorry. The argument is the next case. All the facts I've just summarized are this case. In this case, the immigration judge correctly made a credibility finding based on several problems. Pakistani asylum claim. I'm sorry. Pakistani asylum. That's the only part where I went wrong. So with that, the Court is going to apply the substantial evidence standard. And in applying that standard, all that's required is that there be some evidence to support the decision and that, more importantly, the Petitioner bears the burden of showing that the record compels a contrary conclusion. And in this case, the record simply does not compel a conclusion contrary to the immigration judge's finding. Our law is that when, in a case like this where the BIA summarily affirms, we look at what the IJ did. And if it's an adverse credibility determination, if we determine the bases that the IJ cited for lack of credibility don't withstand scrutiny, then it goes back to the BIA and perhaps to the IJ for consideration, sort of a Ventura remand. So it's we examine each one of the bases that the IJ indicated and determine whether it's effective or substantial or not, right? That is correct in large part, Your Honor. The only refinement I would give to what the Court says is that, again, all the Court is looking for is substantial evidence to support those points. Well, let's talk about some of the bases that the IJ used to determine a lack of credibility. One of them was that he carried his own real ID. That is correct, Your Honor. I'm not talking about the act. I'm talking about his own personal identification card. That was evidence of a lack of credibility? That was evidence going to the plausibility of whether or not Mr. Kong was actually fleeing from Pakistan. In other words, his argument was that he was fleeing from Pakistan. So if all he had carried was a phony ID and not a real ID, that would have been evidence of actual credibility? It would have lended some veracity to his story in that if he was afraid of being identified, as he claimed he would be, he wouldn't have had both a false passport and been carrying this national ID if he were subject to the scrutiny he was suggesting he would be under. Wouldn't you want to get to the United States with your real identity? Why? That's sort of the big question. The real problem is not whether he would ultimately want his real identification. The real problem is this. He claimed that he needed to flee Pakistan. In doing so, he didn't flee with his own identification. He didn't present his own ID. He didn't have his own passport. Rather, he and his father obtained a false passport. He got a false passport. He used it to get out of the country that he felt was persecuting him. And from that point on, used his authentic identification.  But that's that first step that's very important, Your Honor. He claimed he needed it to get out of the country, or he believed that he needed to get out of the country. The real problem is when he gets searched, if he's subject to the scrutiny he claims to be, they find the other identification, he's caught. Now, that is just one of the immigration judge's findings. There are several others that bear a little ---- Could have been caught using the false ID. It could have been the Pakistani authorities on him trying to get out of the country could have determined that the false ID was, in fact, false and stopped him right there, correct? That is correct, Your Honor. And then if they had searched, they would have caught him with the other identification. Another reason that the IJ cited was that his testimony was inconsistent with the State Department report. And quite frankly, I've read both, and I don't understand that finding. Maybe you could help us there. Well, there the immigration judge's position was this, that the State Department report does not demonstrate that the Musharraf government was going door to door and simply bothering party members. Nor did they, the Musharraf government, come into, come door to door and tell folks they cannot join political parties. In fact, the State Department report explains quite the opposite. Political parties were still entitled to exist, albeit the government in March 2000 had put limitations on public gatherings. Tell us how the country report contradicts Khan's testimony. It does not expressly contradict his testimony. What it does is bring up sort of an implausibility that the atmosphere that was prevailing at that time was not as serious as he would have us believe. Therefore, it does not include some of the conduct he says occurred, right? That is, no, it's a little bit more subtle than that, Your Honor. It's more that he wants, he wanted the immigration judge to believe that the Pakistanis, that the Pakistani government was intent that he not be a member of a party, was just, you know, actively telling him he can't be a member of the party, when what the State Department, the climate the State Department reveals is quite the contrary, that political parties were still allowed to exist, that membership in political parties was still allowed to exist. All that was limited at that point were public gatherings. Therefore. Doesn't the country report say that the government arrested individuals to prevent them from attending specific opposition political rallies? That is correct, Your Honor. And that's the point that I'm making, which is the government acted against, more against political gatherings than actual party membership. So that was the immigration judge's basis. But in addition to that basis, there are several other problems that are in the record that are contradictions that do lend credence to the immigration judge's credibility file. What, in your opinion, is the strongest grounds for determining adverse credibility? Well, there are at least three strong grounds. I asked for your strongest. Sure. Certainly, Your Honor. The strongest goes to the story that Mr. Kahn would like to have the Court believe, and indeed, as counsel brought up, that the police were intent on just bothering Mr. Kahn over and over and over. Now, when the base of this was Mr. Kahn's political involvement and political interest, Mr. Kahn would have the immigration judge believe that he was heavily involved since 1989 with the party, and that is the record evidence, not 1993. That's when he may have joined the PP, but his active interest began in 1989. But when it came to bringing up certain bits of information that somebody who was acutely interested in politics, who studied political science as his major in college, Mr. Kahn was not forthcoming with answers and wasn't able to come up with answers, which, in fact, frequently contradicted himself or, I shouldn't say frequently, did contradict himself and, in fact, seemed to flip-flop on his story, in particular. Do you know which state in the United States has a unicameral legislature? I do not profess to be an expert in politics, Your Honor. It's Nebraska. Do you think that reflects poorly on your knowledge of the political system? Yes, Your Honor. As I said, I'm not an expert, and you're proving the point that I'm not an expert in the politics of the United States. If I said I were an expert in state politics nationwide, then, yes, I would be expected to know that Nebraska is a unicameral. He never claimed to be an expert, did he, Kahn? He claimed to have studied as his major, which is tantamount to much the same thing. If I had said I studied all state governments in college, then, if the court asked me what's the unicameral state, I would have answered gladly Nebraska. Do you think that really goes to credibility, counsel? It actually does, Your Honor. What happens here is if there is, as the court explained in the case of Don v. Gonzales, if there's a propensity to exaggerate, this is also in Chub Chub, or claim greater involvement than one is actually interested in, then that tends towards disbelief. You know, I was a history major. And if you asked me who was the president in 1843, I would not know or it would take a lot of back counting to get there. But you would be able to back count, Your Honor. And, of course, that is not history where you were alive. Contrary to Mr. Kahn's experience, where he was active in politics, in fact, his assurance was that he was active from the start. He was interested from the start and involved from the start in 1989. He should have known what was going on in 1990. He should have known what the government was like in 1992. He should have known who the political opponent would have been in the campaigns he was involved in. These are the things he should know based on his experience and the activity that he claims. Calculating who Martin Van Buren might have been or Polk, no, Polk was later, is a little bit of a different circumstance. That's more based on your prior study than your personal experience. And that's the big difference here. Mr. Kahn was not subject to some random examination of the breadth of his knowledge. He was sort of inquired about his actual experiences and the things he should have known if he had the experience that he desired or that he claimed to have. So with that, the first ground given by the immigration judge regarding to the lack of knowledge given by demonstrated by Mr. Kahn is the immigration judge's best ground in response to Your Honor's question. Okay. You're out of time. Thank you for your argument. Thank you, Your Honor. Do you want to respond briefly? As to my client's alleged lack of knowledge, as I indicated at the beginning, I think that that was somewhat overstated by the judge. He was asked about the 1992 election. He was asked what kind of government was in power in 1992. He said, I don't remember exactly. There weren't any follow-up questions after that. That certainly, I don't remember exactly, certainly doesn't equate to total ignorance. And given that there was a coalition government at the time, I don't think that was an unreasonable answer, especially in light of the lack of a follow-up question. As for who is the opponent, who is the Pakistan People's Party opponent in 1999, my client said that he believed it was a party. He said he was asked what party opposed him, which was actually a kind of incorrect way of framing that question in the first place because it was actually a coalition of parties called, I think, the Islami Jamuri Ijtihad. And my client, in answer to that question, said he thought it was a party called the Mutahida Ijtihad. And there's nothing in the evidence to indicate that that wasn't one of the parties in the Islami – excuse me? In the coalition. In the coalition, exactly. Okay. You're out of time. Thank you, Your Honor. Thank you for your argument. The case just argued will be submitted for decision. And we'll proceed to the next case on the argument calendar, which is Al-Hakim v. Gonzales. Counsel will come forward. Is this Tyler? 1872, right? 1872.
judges: B. Fletcher, Siler, Hawkins